IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HAROLD R. SHELBY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 3:06-cv-235-WDS |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
|     Defendant. | ) |

**REPORT AND RECOMMENDATION**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge William D. Stiehl pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the Petition for Review of the Commissioner's Decision Denying Benefits filed by Harold R. Shelby ("Plaintiff") on March 23, 2006 (Doc. 1). For the reasons set forth below, it is **RECOMMENDED** that Plaintiff's petition be **DENIED**, that **JUDGMENT** be entered in favor of the Commissioner, and that the Court adopt the following findings of fact and conclusions of law:

### FINDINGS OF FACT

#### PROCEDURAL HISTORY

Plaintiff applied for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI") on September 30, 2003 (Tr. 20), alleging an onset date of December 1, 1999 (Tr. 62). His claim was denied initially and on reconsideration (Tr. 37, 43). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on August 15, 2005 (Tr. 20). After the hearing, the ALJ issued an unfavorable decision on September 7, 2005 (Tr.20-33). On February 28, 2006, the ALJ's decision became the Commissioner's final decision when the

Appeals Council denied Plaintiff's request for review (Tr. 5-8).

Plaintiff filed this suit in the U.S. District Court for the Southern District of Illinois on March 23, 2006 (Doc. 1). Plaintiff argues that good cause exists for a remand because the ALJ failed to order I.Q. tests to determine whether Plaintiff was mildly retarded.

## SUBSTANTIVE HISTORY

**Medical History**

Plaintiff was 52 years old at the time of the hearing and had a high school education (Tr. 20, 97). In his application for benefits, Plaintiff reported that he had been in learning disability classes during high school (Tr. 97). In the 15 years preceding his application for benefits, Plaintiff worked semi-skilled jobs in construction, as a long haul truck driver, and as a security guard (Tr. 85-88, 94-95, 112-16). Prior to that, he served in the United States Armed Forces from June 1973 until June 1976 (Tr. 62).

In August 2002, Plaintiff reported to the hospital in a state of alcohol induced psychotic disorder with hallucinations and alcohol induced mood disorder (Tr. 141-94). He was also positive for benzodiazepines (Tr. 141). On the day of his admittance, he was administered a Beck Depression Inventory-II, and a Minnesota Multiphasic Personality Inventory-2 (MMPI-2) (Tr. 179-91). The Beck Depression Inventory scores indicated severe depression at intake, but his MMPI-2 yielded no valid conclusions (Tr. 179). Plaintiff said that he had been drinking excessively for five years and had not worked as a truck driver since his license was suspended from a DUI two years earlier (Tr. 173, 175). He experienced withdrawal symptoms and had been having auditory hallucinations for the previous two years (Tr. 173). By the end of his stay, Plaintiff's hallucinations disappeared, his mood improved, and, after nine days in the hospital, he was discharged on August 29, 2002 (Tr. 142).

In November 2003, Dr. Harry J. Deppe performed a psychological examination on Plaintiff (Tr. 200). Plaintiff reported that he was in special education during high school because he was "'a slow learner'" (Tr. 200). He reported that he used alcohol excessively for 4 years until he was treated for alcohol dependence in 2002, and that had a history of 2 DUI's including one 2 years earlier (Tr. 200-01). He also reported that he never had any psychiatric or psychological treatment other than alcohol inpatient treatment, did not take any medication, and had never had hallucinations or suicidal ideations (Tr. 201-02). Following the mental examination, Dr. Deppe opined that Plaintiff had a fair ability to relate to others, an intact ability to understand and follow simple directions, an adequate ability to maintain attention for simple, repetitive tasks, and a fair ability to withstand the stress and pressures of day-to-day work activity (Tr. 201-02).

In December 2003, Dr. M.A. Wharton reviewed the record, opining that Plaintiff's cognitive and attentional skills were intact and adequate for simple one-two step work tasks, but moderately limited as to detailed tasks (Tr. 247). Plaintiff's interpersonal skills were moderately limited by social distrust; adaptive skills were adequate (Tr. 247).

In February 2004, Plaintiff began treatment with the Veteran's Administration Hospital ("VA") (Tr. 218, 223). Plaintiff reported that he had a history of bipolar disorder with medication from 1999 to 2002, and that he was last seen by a psychiatrist in 2002 (Tr. 219, 227). Plaintiff said that he drank 12 beers, 2 to 3 times a month, or 6 beers 4 to 5 times a month (Tr. 219, 222-23). He read with difficulty, but showed good understanding (Tr. 225). In July 2004, Dr. Reshma Dmello found fair insight and judgment (Tr. 306). In October 2004, Dr. Dmello's diagnosis was bipolar disorder (Tr. 297).

In January 2005, Dr. Daniel Holly performed a mental examination at the VA in relation

to Plaintiff's application for veteran's benefits (Tr. 275-82). Dr. Holly looked at Plaintiff's service file and noted that, in 1975, an Army psychiatrist diagnosed anxiety and depression after Plaintiff's wife left him (Tr. 281). Plaintiff told Dr. Hollly that he was in special education in high school and joined the military right after he completed of high school (Tr. 279). Plaintiff went through advanced infantry training, and then, Dr. Holly noted, "surprisingly he went into the Rangers" (Tr. 279). Plaintiff told Dr. Holly that he stopped drinking in 1999 and was admitted as an inpatient to the "Redhill center" in 2000 because he was extremely depressed (Tr. 277-78). Because Plaintiff's alcohol dependence had been in a long-term remittance, Dr. Holly opined that he could manage his own benefits (Tr. 275).

In April 2005, Dr. Holly administered a personality assessment inventory (Tr. 276). Plaintiff reported that he had difficulty reading and read aloud slowly, but accurately (Tr. 276). Because Plaintiff read accurately and responded to the questions consistently, Dr. Holly found that he had an invalid profile due to portraying his life and situation far more negatively than objective evidence could confirm (Tr. 276). Dr. Holly opined that Plaintiff had a schizoaffective disorder with symptoms similar to those he exhibited while in the service, and there was at least a 50% probability that his mental disorder was related to his in-service anxiety (Tr. 276).

On November 9, 2005, Dr. D. Shaner Gable and Dr. Carolyn B. Hines gave Plaintiff a mental status evaluation and administered a Wechsler Adult Intelligence Scale-3 (Tr. 326). These physicians opined that Plaintiff had deteriorated since his November 2003 examination by Dr. Deppe, noting a verbal score of 69 and diagnosing him with mild mental retardation (Tr. 330).

**Hearing Testimony**

Both Plaintiff and a vocational expert, Dr. Thomas Mehaffey, testified at the hearing (Tr.

335). In response to questions posed by the ALJ, Plaintiff testified that he did not have a driver's license because he did not trust that he could drive safely while taking certain medications (Tr. 340). He testified that he was in special education in high school for reading and that he believed he was reading at a fifth-grade level (Tr. 340). He testified that he did not obtain any vocational training during high school (Tr. 340).

Plaintiff testified that he had not worked since his alleged onset date and had never applied for unemployment benefits (Tr. 341). He next testified that he worked as a commercial truck driver from 1997 to 1999, ultimately quitting because he did not think it was safe for him to drive (Tr. 341-42). He testified that prior to driving trucks he worked as a carpenter, which entailed finishing dry wall and lifting no more than 65 pounds at a time (Tr. 342). He testified that he left the carpentry job because of back pain (Tr. 342). He next testified that he worked as a security guard at nights, which required him to stand or walk a post and fill out a chart (Tr. 343).

Plaintiff then testified that his physical problems included lower back pain and pain down in his right leg (Tr. 343-44). He testified that, on most days, the pain registered as an 8 on a scale in which 10 represented the worst possible pain (Tr. 344). He testified that he was in pain during the hearing and that laying himself down in the fetal position or moving around sometimes made it better (Tr. 344). He testified that he took Hydrocodone twice a day for pain relief (Tr. 344). He also testified that taking a hot shower sometimes helped him relieve back pain (Tr. 344-45). He next testified that his back pain had gotten worse since he had surgery on it several years before (Tr. 345). He testified that his doctor prescribed him pain medication for it, but that he had not had physical therapy in several years (Tr. 345).

Plaintiff then testified that he started hearing voices in 1999, telling him that he was

5

worthless and that he had no right to live (Tr. 346).  He testified that the voices subsided with medication (Tr. 346).  He then testified that he could not work because all he wanted to do was lay around all day and that he could not get comfortable half the time (Tr. 346).  He also testified that he could not work because he could not keep his mind on things long enough and that his medication did not help that problem (Tr. 346-47).

He testified further that he was seeing a psychiatrist at the VA and was also getting one-to-one counseling there once a month (Tr. 347).  He testified that he received a 50 percent rating for disability from the VA after he was severely burned in the military (Tr. 347).  He testified that he stopped abusing alcohol in 2000, but that he did not completely stop drinking alcohol until 2004 (Tr. 348).

He next testified that he could not function properly enough to work, adding that he could not keep his mind on what he was doing, had back problems, and could not stand long enough to keep a job (Tr. 349).  He testified further that, on a typical day, he got up at 8:00 a.m., took a shower, watched television until he started feeling pain in his back, and laid himself down to relieve the back pain (Tr. 349-50).  He testified that he managed his own money, did not grocery shop or cook, gave up his hobbies of fishing and playing guitar, and did not go out or spend time with people other than one friend, who met with him once a month to talk about old times (Tr. 350-51).  In response to questions posed by his attorney, Plaintiff testified that he never left the house by himself because he felt suicidal and wanted someone to keep an eye on him (Tr. 352).

The vocational expert testified that Plaintiff's past work as a truck driver was medium, semi-skilled work (Tr. 353).  He testified that the carpentry work was medium to heavy, semi-skilled work (Tr. 353).  He testified further that Plaintiff's work as a security guard was semi-skilled, light work (Tr. 353).  He testified that Plaintiff would not be able to perform his past

relevant work if he were limited to no more than occasional contact with supervisors and peers, and minimal contact with the public (Tr. 353). He then testified that Plaintiff would be eligible for 55,000 jobs in the regional economy if restricted to light work (Tr. 354). He testified that if Plaintiff required the option of alternating between sitting and standing, 80 per cent of those jobs would go away, leaving 2,000 packaging jobs, 1,000 simple machine operation jobs, and 1,000 jobs doing inspection work (Tr. 354). He then testified that Plaintiff would not be able to retain employment at all if he could not sustain concentration on a regular and continuing basis (Tr. 354-55).

**The ALJ's Findings and Conclusions**

Pursuant to Step 1 of the five-step sequential evaluation, the ALJ found that claimant was not engaged in substantial gainful activity (Tr. 31). In Step 2, the ALJ found that Plaintiff had several severe disabilities, including: lumbar degenerative disc disease, knee arthritis, burn scars affecting his right leg and causing him to limp, schizoaffective disorder, and a history of alcohol abuse (Tr. 32). In Step 3, the ALJ found that Plaintiff's impairments did not meet or equal listed impairments in Appendix 1 (Tr. 32). The ALJ found in Step 4 that Plaintiff's impairment prevented him from performing his past relevant work (Tr.32). In the fifth and final step, the ALJ found that Plaintiff could perform a significant range of light work and that a significant number of those jobs existed in the economy (Tr. 32). Pursuant to the foregoing evaluation, the ALJ found that Plaintiff was not under a disability and was thus ineligible for SSI or DIB (Tr. 33).

CONCLUSIONS OF LAW

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act ("Act") is limited to a determination of whether those

7

findings are supported by substantial evidence. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive[.]"); Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2005) (stating that "the reviewing court is not allowed to substitute its judgment for the ALJ's by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility"). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1972) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 101 (1938)). See also Sims v. Barnhart, 309 F.3d 424, 428 (7th Cir. 2002); Green v. Shalala, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. See Golembiewski, 322 F.3d at 915; Cannon v. Apfel, 213 F.3d 970, 974 (7th Cir. 2000). This deferential standard applies to credibility findings as well as RFC findings. Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001) ("The ALJ's credibility determinations generally will not be overturned unless they were patently wrong."). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." Lopez ex. rel. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003); Carradine v. Barnhart, 360 F.3d 751, 756 (7th Cir. 2004) (stating that "an administrative agency's decision cannot be upheld when the reasoning process employed by the decision maker exhibits deep logical flaws").

     Supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social

Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. 20 C.F.R. § 416.920.  The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." 20 C.F.R. § 416.920(c).  If he is, the claimant is not disabled and the evaluation process is over; if he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits ... physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c).  Third, the ALJ determines whether that severe impairment meets any of the impairments listed in Appendix 1, Subpart P, Regulation No. 4 ("Appendix 1"). 20 C.F.R. § 401, pt. 404, subpt. P, app. 1.  If it does, then the Commissioner acknowledges that the impairment is conclusively disabling.  However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" ("RFC") and the physical and mental demands of her past work.  If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. 20 C.F.R. § 416.920(e).  However, if the claimant shows that her impairment is so severe that she is unable to engage in past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience and functional capacity to work, is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.920(f).

  Plaintiff argues that a remand is warranted because the ALJ failed to develop a full record before finding that Plaintiff could perform a substantial range of light work.  More specifically, he contends that the ALJ failed to order an I.Q. test to determine whether he met Listing 12.05(c) of Appendix 1.  "Although a claimant has the burden to prove disability, the ALJ has a duty to develop a full and fair record.  Failure to fulfill this obligation is good cause to remand for gathering of additional evidence." Smith v. Apfel, 231 F.3d 433, 437 (7th Cir. 2000)

9

(internal quotes and citations omitted).  However, the Seventh Circuit Court of Appeals has clarified that "the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability." Scheck v. Barnhart, 357 F.3d 697, 702 (2004); see also 20 C.F.R. § 404.1512(c) ("In general, you have to prove to us that you are blind or disabled ... This means you must furnish medical and other evidence that we can use to reach conclusions about your [impairments and ability to work].").

In the instant case, Plaintiff did not claim mental retardation as an impairment in his application for benefits, nor did he provide any medically determinable evidence of mental retardation for the ALJ to examine before rendering a decision.  Instead, Plaintiff obtained evidence of mental retardation in November 2005, which was three months after the hearing and two months after the ALJ issued his written opinion.  Thus, no claim of mental retardation was presented to the ALJ, and, as such, no medically determinable evidence of mental retardation was presented to him either.  The Court cannot assign error to the ALJ for not considering Plaintiff's mental retardation when Plaintiff neither alleged it nor provided evidence of it prior to the ALJ's decision. See Eads v. Sec'y of the Dep't of Health & Human Services, 983 F.2d 815, 817 (7th Cir. 1993) ("[The ALJ] cannot be faulted for having failed to weigh evidence never presented to him[.]").  Likewise, because there was no claim of mental retardation, the ALJ had no duty to order tests for determining whether that impairment affected Plaintiff's eligibility for benefits under the Act.  In light of the foregoing discussion, Plaintiff's petition should be **DENIED**.

Because Plaintiff has failed to demonstrate that the ALJ's failed to develop a full and fair record, it is **RECOMMENDED** that Plaintiff's petition be **DENIED**, that **JUDGMENT** be entered in favor of the Commissioner, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties shall have ten (10) days after service of this Recommendation to file written objections thereto.  The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. <u>Snyder v. Nolen</u>, 380 F.3d 279, 284 (7th Cir. 2004); <u>United States v. Hernandez-Rivas</u>, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: August 20, 2007**

         <u>s/ *Donald G. Wilkerson*</u>
         **DONALD G. WILKERSON**
         **United States Magistrate Judge**